## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Philip R. Vance,                                    Civil No. 08-4756 (ADM / SRN)

                Petitioner,

      v.                                     **REPORT & RECOMMENDATION**

John King, and
Lori Swanson, Attorney General
of Minnesota

              Defendant.

---

Philip R. Vance, Pro Se.

 Kevin J. Golden, Dakota County Attorney's Office, 1560 Highway 55, Hastings, Minnesota 55033, for Defendants

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on petition of Petitioner Philip R. Vance for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1), Petitioner's Motion for Evidentiary Hearing and Relief (Doc. No. 9) and Petitioner's Application for Appointment of Counsel (Doc. No. 12). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons discussed below, the court recommends that the petition be denied and that this action be dismissed with prejudice. The Court also recommends the denial of Petitioner's motion for a hearing and application for counsel.

## I.    FACTUAL AND PROCEDURAL HISTORY

Petitioner is currently serving a life sentence at the Minnesota Correctional Facility - Stillwater ("MCF Stillwater"). On October 5, 2004, a Dakota County jury convicted Petitioner on charges of first-degree premeditated murder, first-degree felony murder and second-degree

intentional murder for the shooting death of Khaled Al-Bakri (Al-Bakri) during the robbery of a

convenience store in South St. Paul, Minnesota.

A.    **Factual Background**[1]

On December 22, 2002, Al-Bakri was working at Sabreen's Supermarket in South St.

Paul.  Minnesota v. Vance, 714 N.W.2d 428, 433 (Minn. 2006).  His brother, who owned the

store, left Al-Bakri alone to run the store shortly before 9:30 that night.  Sometime between 9:30

and 9:45 p.m., witnesses reported the robbery of Sabreen's.  When officers arrived, Al-Bakri was

pronounced dead at the scene from gunshot wounds.  The police found four cartridge casings

from a .22 caliber gun on the floor of the store.  The police were unable to find any physical

evidence at the scene connecting Petitioner or any other suspect to the murder and the murder

weapon was never found.  Id.  Al-Bakri's brother told officers that about $625-650 in cash,

lottery tickets, cigarettes, white plastic bags and a cordless phone were missing from the store.

Appellant's Direct Appeal Brief, Minnesota v. Vance, No. A05-15, 2005 WL 4120317, at *9

(June 30, 2005).

A number of witnesses testified at trial about Petitioner's activities before and after the

December 22, 2002 murder.  John Martin, a convicted burglar, testified that on that evening, he,

Petitioner and Dominic Johnson were at the Radisson bar in downtown St. Paul between 7 p.m.

and 8 p.m.  Vance, 714 N.W.2d at 433-34.  The three discussed the upcoming holidays and

Petitioner and Johnson made arrangements to buy presents for their children.  Martin testified

---

[1]This Court's recitation of facts is based primarily on the opinions of the Minnesota
Supreme Court in Minnesota v. Vance, 714 N.W.2d 428 (Minn. 2006) and Vance v. Minnesota,
752 N.W.2d 509 (Minn. 2008).  Neither party has suggested that they disagree with the recitation
of facts in these opinions; moreover, the facts are in agreement  with the recitation of facts in
Petitioner's direct appeal.  See Appellant's Direct Appeal Brief, Minnesota v. Vance, No. A05-
15, 2005 WL 4120317, at *6-26 (June 30, 2005).

that around 8:30 p.m., Johnson made a call from Petitioner's cell phone to two women from

South St. Paul.  Petitioner and Johnson told Martin that they were going to South St. Paul and

invited Martin to join them.  Martin declined and as he was heading to his bus, he saw the two

women arrive in a four-door Chevy Corsica.

Melissa Stites, the head bartender at the Radisson bar, testified that on December 22,

2002, Petitioner, Johnson and a third man came into the bar around 7:30 p.m.  She stated that

they were "more secretive" than usual and when she asked what they were doing, Petitioner

replied that they were "getting their plan on."  As the men left, Stites commented that tips were

low that night, to which Petitioner replied, "Don't worry, baby, when I get back there's going to

be plenty of money."  Id.

Eric Griffin, an acquaintance of Petitioner and Johnson, testified that he saw the two men

arrive at The Buttery, a downtown St. Paul bar, sometime after 10:00 p.m. on December 22,

2002.  Id. at 434.  Petitioner, who Griffin described as acting "kind of wild from drinking," told

him that he had committed a robbery in South St. Paul, but did not identify the robbery victim or

the exact location of the robbery.  Id.; Appellant's Direct Appeal Brief, Minnesota v. Vance, No.

A05-15, 2005 WL 4120317, at *14.

Colleen McManus, the night manager at The Buttery testified that she saw Petitioner and

Johnson getting out of a car outside the bar as she returned for work between 10:15 and 10:30

p.m. on December 22, 2002.  Vance, 714 N.W.2d at 434; Appellant's Direct Appeal Brief,

Minnesota v. Vance, No.  A05-15, 2005 WL 4120317, at *11-12 .  A few minutes later, she saw

the two men talking to a group of people inside the bar, including Maynard Cross.  McManus

testified that Petitioner and Johnson both seemed nervous and when McManus asked Petitioner

what was wrong, he replied, "I really fucked up this time."  Later, McManus again spoke to

Petitioner and he said that he didn't 'mean for it to happen, it wasn't supposed to happen that way.' Id. Petitioner then made a motion which McManus interpreted to mean that Petitioner had shot someone. When she asked him if he had shot someone, Petitioner said that 'it wasn't supposed to happen that way.' Id.

McManus reported the conversation to her brother, John McManus, a St. Paul police officer. Vance, 714 N.W.2d at 435. On December 23, 2002, Melissa Stites also reported her conversations with Petitioner at the Radisson bar to Officer McManus. Stites agreed to participate in an undercover sting investigation of Petitioner and on January 3, 2003, she met with Petitioner and Johnson at The Buttery under the guise of purchasing a gun from Petitioner. Id. At some point, when Petitioner and Stites went to a different bar together, she asked Petitioner if he ever had shot anyone. Petitioner replied that he had "shot a guy two weeks ago over south side five times in the back." Id.

The state also introduced testimony from witnesses who were in custody with Petitioner prior to trial. One witness, Isaac Hodge, who was incarcerated with Petitioner at the Sherburne County jail in 2003, testified that he and Petitioner were looking at a newspaper together when Petitioner saw a picture of Maynard Cross. Petitioner stated, "Man, this dude put my name in some bullshit." Hodge also testified that Petitioner told him that he was involved in a murder-robbery. Id. Tyrone Crawford, also incarcerated in the Sherburne County jail at the same time, testified that he had had a conversation with Petitioner in which Petitioner told him that he'd "shot a guy at the grocery store, and he was concerned that that was going to come back on him." Id. Petitioner also told Crawford that Maynard Cross was going to testify against him about shooting somebody at a grocery store. Id.

John Nunn was housed at both the Sherburne County jail and Sandstone Prison with

Petitioner.  Id.  Nunn testified that Petitioner claimed to have committed a robbery in which someone "got murked," which Nunn interpreted to mean either hurt, shot or killed.  Petitioner also told Nunn that he was concerned about the police finding a .22 caliber gun used in the robbery.  Id.

Dontay Reese testified that when he was in the Dakota County jail with Petitioner, the two men had multiple conversations about a murder in which Petitioner was involved.  Id.  Petitioner told Reese that the shooting "wasn't supposed to go down like that," and that he'd shot Al-Bakri because Johnson had identified Petitioner by name during the robbery.  Id. at 435-36.  Petitioner told Reese that he was drunk and "gave the dude five," and that he used a "deuce-deuce" to kill the clerk, which Reese interpreted to mean a .22 caliber gun.  Id.

Geronimo Estrada, incarcerated at the Ramsey County Workhouse with Petitioner, testified that they discussed the murder on several occasions.  Id. at 436.  Petitioner told Estrada how Al-Bakri reacted to the robbery, detailed the shooting and described what he and Johnson took from the store: money, cigarettes, plastic bags, lottery tickets and a telephone.  Id.  Officer Daniel Vujovich testified that those items were taken from Sabreen's during the robbery and a list of those items was never publicly disclosed.  Id.

At trial, the prosecution introduced recordings of police officers speaking with Petitioner and during the course of the interviews, the officers accused Petitioner of lying.  Id.

Petitioner did not testify and presented no witnesses in his defense.

**B.    Procedural Background**

Petitioner filed a direct appeal to the Minnesota Supreme Court, which affirmed the trial court's judgment.  He then filed a petition for post-conviction relief to the Dakota County District Court, which denied his petition and then filed a petition for post-conviction relief with

the Minnesota Supreme Court, which also denied his petition.  Petitioner then filed the instant

habeas petition.

### 1.        Direct Appeal to Minnesota Supreme Court

Petitioner appealed his conviction to the Minnesota Supreme Court on June 30, 2005,

alleging that the trial court erred in denying his motion to introduce certain alternative-

perpetrator evidence and reverse-<u>Spreigl</u> evidence.[2]  Petitioner also alleged the denial of a fair

trial, citing the cumulative prejudicial effect of trial court errors, including the admission of

evidence that witnesses were threatened or fearful; the trial court's failure to sua sponte give a

cautionary instruction regarding that evidence; and the trial court's failure to sua sponte give a

limiting instruction with respect to unredacted statements by police officers that Petitioner was

untruthful.  <u>Vance</u>, 714 N.W.2d at 433.  Petitioner also argued pro se that newly discovered

evidence entitled him to a new trial; the trial court erroneously excluded introduction of a

relevant letter; and the prosecutor committed prosecutorial misconduct by crying during her

opening statement.  <u>Id.</u>   Petitioner filed a pro se supplemental brief on July 22, 2005, in which

he alleged additional grounds for relief: (1) that he possessed newly-discovered evidence in the

form of a letter from Trevor Crawford stating that he had lied to protect Maynard Cross; (2) that

he was denied the opportunity to present a defense by the trial court's refusal to admit a letter

from the victim's family to Cross; and (3) that the prosecutor committed misconduct during the

course of the trial.

The Minnesota Supreme Court considered Petitioner's claims and affirmed the trial

---

[2] Under Minnesota law, reverse-<u>Spreigl</u> evidence refers to evidence of other crimes, wrongs, or bad acts committed by the alleged perpetrator in order to cast doubt upon the identification of the defendant as the person who committed the crime.  <u>Minnesota v. Jones</u>, 678 N.W.2d 1, 16 (Minn. 2004).

court's judgment.  Vance, 752 NW.2d 509.

### 2.    Petition for Post-Conviction Relief

After Petitioner's conviction and sentence were affirmed on direct appeal, in May 2007, he filed a petition for post-conviction relief with the Dakota County District Court. See Vance v. Minnesota, 752 N.W.2d 509, 512 (Minn. 2008).  The district court denied the petition, concluding that the claims were either raised and decided on direct appeal, or were known and not raised at the time of appeal.  Id.  On appeal to the Minnesota Supreme Court, Petitioner argued that he was entitled to post-conviction relief based on (1) ineffective assistance of trial and appellate counsel; (2) newly discovered evidence of witness recantation; (3) the insufficiency of the indictment in light of recanted witness testimony; (4) prosecutorial misconduct; (5) failure to submit the charge to the grand jury or the jury; and (6) cumulative errors preventing Petitioner from receiving a fair trial.  Id.  Petitioner also argued that the district court abused its discretion by denying him an evidentiary hearing.  Id.

The Minnesota Supreme Court affirmed Petitioner's conviction on July 10, 2008, holding the following: (1) an evidentiary hearing was not warranted on Petitioner's post-conviction claims of ineffective assistance of trial counsel; (2) claims of ineffective assistance of counsel were procedurally barred; (3) witness' recantation of trial testimony that he was with Petitioner on the night of the murder did not provide sufficient indicia of trustworthiness to warrant an evidentiary hearing; (4) inmate's recantation of trial testimony that Petitioner admitted details of murder to him did not provide sufficient indicia of trustworthiness to warrant an evidentiary hearing; (5) Petitioner was not entitled to post-conviction relief based on alleged newly-discovered evidence; and (6) Petitioner was not entitled to post-conviction review of claims that were either known to him, or should have been known, at the time of direct appeal.  Id. at 512-17.

### 3. Federal Habeas Petition

On July 21, 2008, Petitioner filed the instant petition for a writ of habeas corpus,

asserting the following alleged constitutional violations: (1) the trial court's refusal to admit

testimony of Petitioner's witnesses; (2) the admission at trial of allegedly perjured testimony of

witnesses; (3) the failure of the prosecution to disclose to Petitioner evidence favorable to him;

(4) prosecutorial misconduct during closing argument; (5) prejudicial error by the prosecution

misstating and misusing evidence; (6) the denial of a right of appeal; and (7) ineffective

assistance of counsel.  (Doc. 1, Petition.)

## II. DISCUSSION

### A. Evidentiary Hearing

Petitioner's claims are strictly legal in nature. With respect to issues of credibility, the

Court will rely on the record before it and the credibility determinations of the state court.

Accordingly, the Court will address Petitioner's claims without an evidentiary hearing.

### B. Grounds of Habeas Relief

Habeas relief is available to a state prisoner if "he is in custody in violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Anti-Terrorism

and Effective Death Penalty Act (AEDPA) limits habeas review to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).

The United States Supreme Court explained the meanings of the "contrary to" and

"unreasonable application" clauses in Williams v. Taylor, 529 U.S. 362 (2000).  A state court

decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-13.  A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411).

In addition, when reviewing a state court decision, "a federal court . . . presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000); see 28 U.S.C. § 2254(e)(1).  This deference applies to factual determinations made by state trial courts and state appellate courts. Sumner v. Mata, 449 U.S. 539, 547 (1981).  The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see Whitehead v. Dormire, 340 F.3d 532, 539 (8th Cir. 2003).

Before filing a federal habeas petition, a petitioner must exhaust his state court remedies by fairly presenting his federal constitutional claims to the highest available state court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  A federal claim is fairly presented when the petitioner refers "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) (quoting Myre v. State of Iowa, 53 F.3d

199, 200-01 (8th Cir. 1995) (quoting <u>Kelly v. Trickey</u>, 844 F.2d 557, 558 (8th Cir. 1988))).  A federal claim has not been fairly presented to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004).

If a petition contains claims that have not been fairly presented, the court must determine if those claims are unexhausted or procedurally defaulted.  A claim is unexhausted if the claim has not been fairly presented in one complete round of the state's established appellate review process, <u>O'Sullivan</u>, 526 U.S. at 845, but the petitioner has the right under state law to raise the claim by any available procedure, 28 U.S.C. § 2254(c).

A constitutional claim is procedurally defaulted if it has not been fairly presented in the state courts, and the state courts will no longer review it because an independent and adequate state procedural rule precludes further litigation of the claim.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). Under Minnesota law, "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post-conviction relief." <u>State v. Knaffla</u>, 243 N.W.2d 737, 741 (Minn. 1976).  There are two exceptions to the <u>Knaffla</u> rule: (1) where a claim is so novel that its legal basis was not reasonably available at the time of direct appeal, or (2) if the defendant did not deliberately or inexcusably fail to raise the issue in the first appeal and fairness requires review.  <u>Townsend v. Minnesota</u>, 723 N.W.2d 14, 18 (Minn. 2006).

When a claim is procedurally defaulted in state court, the federal habeas court must determine whether the prisoner has demonstrated cause and prejudice for the default, or whether a failure to consider the claim will result in a fundamental miscarriage of justice.  <u>McCall</u>, 114

F.3d at 758 (citing <u>Coleman</u>, 501 U.S. at 750.).  Prejudice need not be considered where a

petitioner has failed to fulfill the cause prong of the test.  <u>Id.</u>  The miscarriage of justice

exception is only available to a petitioner who has demonstrated that a constitutional violation

has probably resulted in the conviction of an innocent person.  <u>Id.</u>  If the exceptions do not apply,

the procedural default cannot be excused, and the court will deny the petition without addressing

the merits of the claim.  <u>See</u> <u>Carney v. Fabian</u>, 441 F. Supp. 2d 1014, 1029 (D. Minn. 2006),

<u>cert.</u> <u>denied</u>, 128 S.Ct. 721 (2007).

### 1.    Trial Court's Refusal to Admit Testimony of Certain Defense Witnesses

Petitioner argues that the trial court's preclusion of the testimony of Samantha O'Reilly,

Iran Tasamound, Christina Persuad and Mary Bitney violated his constitutional right to present a

complete defense.  Petitioner presented this issue to the Minnesota Supreme Court, <u>Minnesota v.</u>

<u>Vance</u>, 714 N.W.2d at 436-39, and while the admissibility of evidence in a state trial is a matter

of state law that does not ordinarily form the basis for federal habeas relief, <u>Clark v. Groose</u>, 16

F.3d 960, 963 (8th Cir. 1994), <u>cert.</u> <u>denied</u>, 513 U.S. 834 (1994), such a ruling is reviewable in a

habeas proceeding when the alleged error infringes upon a specific constitutional protection or is

so prejudicial that it amounts to a denial of due process.  <u>Manning-El v. Wyrick</u>, 738 F.2d 321,

322 (8th Cir. 1984) (per curiam), <u>cert.</u> <u>denied</u>, 469 U.S. 919 (1984).  As Petitioner here has

alleged a violation of his right to present a full and complete defense under the Sixth

Amendment, the Court concludes that the claim is reviewable. Also, the Court finds that

Petitioner fairly presented his federal challenge as to these witnesses to the state courts, which

denied his appeals.

Under Minnesota law, when the identity of the perpetrator is at issue, the defendant may

present evidence showing that an alternative perpetrator committed the crime.  <u>Minnesota v.</u>

Blom, 682 N.W.2d 578, 621 (Minn. 2004).  Alternative perpetrator evidence is admissible if it has an inherent tendency to connect the alternative party to the commission of the crime. Minnesota v. Jones, 678 N.W.2d 1, 16 (Minn. 2004).

The defendant may also present "reverse-Spreigl" evidence, i.e., evidence of other crimes, wrongs, or bad acts committed by the alleged perpetrator in order to cast doubt upon the identification of the defendant as the person who committed the crime.  Id.  In order to admit reverse-Spreigl evidence, the defendant must meet the threshold requirement of connecting the alternative perpetrator to the commission of the crime with which the defendant is charged.  Id. If this requirement is not met, the reverse-Spreigl alternative-perpetrator evidence is not admissible.  See Minnesota v. Hawkins, 260 N.W.2d 150, 159 (Minn. 1977).  However, if the threshold showing is met, the defendant must also show by clear and convincing evidence that the perpetrator participated in the reverse-Spreigl incident.  Woodruff v. Minnesota, 608 N.W.2d 881, 885 (Minn. 2000).

In Petitioner's case, he listed as potential trial witnesses Samantha O'Reilly, Christina Persuad, Iran Tasamound and Mary Bitney, see Resp.'s Post-conviction Brief, Minnesota v. Vance, No. A07-1552, 2008 WL 2873517, at *8 (Feb. 8, 2008), and Petitioner argued for the introduction of their alternative-perpetrator/reverse-Spreigl testimony both at trial and on direct appeal.  See Appellant's Direct Appeal Brief, Minnesota v. Vance, No. A05-15, 2005 WL 4120317, at *24-44 (June 30, 2005).  The Minnesota Supreme court applied a harmless error analysis to the trial court's exclusion of the alternative-perpetrator and reverse-Spreigl evidence. Vance, 714 N.W.2d at 437.  The Minnesota Supreme Court held that Petitioner failed to present any evidence (including the proffered testimony of witnesses Tasamound and Bitney) having an inherent tendency to connect Maynard Cross to Al-Bakri's murder.  Id.  As to the proffered

12

testimony of witness O'Reilly which Petitioner sought to submit in support of alternative-perpetrator evidence, the Minnesota Supreme Court held that its exclusion was harmless error in light of other strong evidence incriminating Petitioner.  Id. at 439.

Petitioner has not shown that the Minnesota Supreme Court's decision was contrary to or an unreasonable application of established precedent, nor was it based on an unreasonable determination of facts.  Accordingly, the Court recommends the denial of this ground of relief.

### 2.      Allegedly Perjured Testimony of Witnesses

Petitioner next asserts a violation of his due process rights, arguing that the trial court admitted the perjured testimony of witnesses Colleen McManus, John Martin and Dontay Reese.[3]  Petitioner alleges that McManus told the grand jury that Petitioner admitted to shooting someone, but told the trial jury that he did not make such an admission.  Petitioner also cites the "recantations" of witnesses Reese and Martin, alleging that the veracity of their trial testimony requires an evidentiary hearing.  Petitioner also describes the testimony of Maynard Cross as perjured and refers to the "newly discovered evidence of Trevor Crawford, Eric Townsend, Michael White and Wayne Jones," in support of his argument that an evidentiary hearing is required.  (Doc. 11, Pet.'s Reply Mem. at 2).

As to the testimony of Ms. McManus, Respondent notes that grand jury transcripts were available to Petitioner at the time of his direct appeal as were trial transcripts, however Petitioner

---

[3]Petitioner's submission to the Court failed to include a page 3, describing the grounds for habeas corpus relief which he had identified as "conviction obtained by perjured testimonies of witness' [sic]."  (See, Doc. 1, Petition at 2-4.).  However, Petitioner subsequently submitted a reply brief describing the grounds sufficiently for the Court to address his claim.  (Doc. 11, Reply at 2.)

failed to address this discrepancy in his direct appeal.[4]  With respect to the affidavits of John

Martin and Dontay Reese, Martin states that five years after the event and almost three years

after his testimony, he is not sure that he testified about the correct date at trial.  Respondent

notes that Martin testified under oath and subject to cross examination at trial that he was with

Petitioner at the Radisson bar on the night of the murder.  Vance, 752 N.W.2d at 514.  At that

time, Martin had a specific recollection of the date, time conversation and persons present.  Id.

In contrast to what appears to be an affidavit written on Petitioner's behalf, Respondent argues

that Martin's sworn testimony has an inherently higher degree of trustworthiness.  Id.  Likewise,

Respondent argues, Reese's affidavit is suspect.

Regarding the affidavits of Martin and Reese and the newly-discovered evidence of

Trevor Crawford, Eric Townsend, Michael White and Wayne Jones, the Minnesota Supreme

Court considered and rejected these claims as the bases for an evidentiary hearing and/or a new

trial.  Vance, 752 N.W.2d at 514, 516-517.  The Minnesota Supreme Court concluded that the

Martin and Reese affidavits were not reasonably reliable and that Petitioner failed to meet the

requirements to obtain a new trial based on recanted testimony.  Id. at 514-15.  As to Petitioner's

allegations of newly-discovered evidence, the Minnesota Supreme Court held that Petitioner

failed to show that the information allegedly constituting new evidence was unknown to him and

his counsel at the time of trial or that his failure to learn of that information was not due to a lack

of diligence.  Id. at 517.

---

[4]Petitioner did address the discrepancy in McManus's testimony in his pro se post-conviction petition (Appellant's Mem. in Supp. Pet. for Post-Conviction Relief, Dakota County Case # 02018427 at 26), to which Respondent replied that grand jury and trial transcripts were available to Petitioner at the time of his direct appeal, yet he failed to address the issue either on cross-examination or direct appeal. Respondent's Post-Conviction Brief, Minnesota v. Vance, No. A07-1552, 2008 WL 2873517 at *10 (Feb. 8, 2008).

Based on this Court's narrowly-proscribed review and the deference it must give to the state court's factual determinations, the Court concludes that Petitioner has not shown that the adjudications below regarding the affidavits and newly-discovered evidence were contrary to or an unreasonable application of established Supreme Court precedent, nor were they based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(a). Accordingly, the Court recommends the denial of this ground of Petitioner's petition as it relates to the Martin and Reese affidavits and the allegations concerning newly-discovered evidence.

As to Petitioner's claim that his constitutional rights were violated by the admission of the testimony of witness McManus – testimony that Petitioner claims was perjured – that claim was known or should have been known to Petitioner at the time of his direct appeal, but was not raised on direct appeal. (See Appellant's Direct Appeal Brief, Minnesota v. Vance, No. A05-15, 2005 WL 4120317 (June 30, 2005). Petitioner has no right under state law to raise this claim now. His claim as to McManus's testimony is therefore procedurally defaulted, as neither exception to the Knaffla rule applies.[5]

### 3.    Failure of Prosecution to Disclose Favorable Evidence

Petitioner seeks habeas relief alleging that his conviction was obtained by the failure of the prosecution to disclose evidence favorable to him, in violation of his due process rights. Petitioner states that during the trial testimony of witness Colleen McManus, she admitted to viewing a surveillance tape shown to her by investigators of the Dakota County Sheriff's Office.

---

[5] As noted previously, where a Minnesota Petitioner has taken direct appeal, "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post-conviction relief." Knaffla, 243 N.W.2d at 741. The two exceptions to the Knaffla rule are: (1) where a claim is so novel that its legal basis was not reasonably available at the time of direct appeal, or (2) if the defendant did not deliberately or inexcusably fail to raise the issue in the first appeal and fairness requires review. Townsend, 723 N.W.2d at 18.

The tape showed the area in which Ms. McManus testified to having seen Petitioner exit a vehicle shortly after the murder.  Petitioner alleges that he and his counsel never had an opportunity to view this tape because the prosecutor failed to disclose it during discovery.  In addition, Petitioner claims that the government failed to obtain Sprint cell phone and cell tower requests prior to their automatic destruction – records that Petitioner argues would have placed him in a different city at the time of the murder.

Respondent argues that Petitioner has no basis on which to assert that the surveillance video and cell phone records would have been exculpatory.  Moreover, Respondent contends that Petitioner cannot demonstrate bad faith on the part of the state and therefore the failure to preserve such evidence does not amount to a denial of due process.  Further Respondent notes that the presence of the surveillance tape and the lack of cell phone records were known to Petitioner at the time of trial and direct appeal and the Minnesota Supreme Court affirmed Petitioner's conviction.

Petitioner raised this issue regarding the prosecution's failure to disclose exculpatory evidence in his post-conviction appeal, but not on direct appeal.   Petitioner indicates that he was alerted to the previous existence of the surveillance tape when Ms. McManus mentioned it during her trial testimony and that he was informed of the possible significance of the cell phone records during a January 16, 2003 interview.  (Petition at 4.)   Therefore, Petitioner could have raised these issues at trial and on direct appeal.  He has no right under state law to raise the claim now under Knaffla and neither exception to Knaffla applies.  Petitioner has failed to show either cause and prejudice for the default or that a fundamental miscarriage of justice would result if the Court does not consider the claim.

Even on the merits, Petitioner's claim fails.  The Supreme Court has held that "unless a

criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58, (1988).  Here, Petitioner argues that he has demonstrated bad faith simply because the evidence was not available.  That is contrary to Youngblood, in which the Court voiced its unwillingness to read the "fundamental fairness" requirement of the Due Process Clause "as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Petitioner has failed to demonstrate bad faith.  Finally, Respondent is correct that there is no basis in the record to conclude that the absent evidence would, in fact, be exculpatory.  The Court recommends the denial of this ground for which Petitioner seeks habeas relief.

### 4.        Prosecutorial Misconduct During Closing

In his fourth ground for habeas relief, Petitioner alleges that his conviction was obtained by prosecutorial misconduct during closing argument, in violation of his 6th Amendment rights. Specifically, Petitioner argues that the prosecutor spoke of witnesses' fears about testifying and also stated that Petitioner had disrupted their lives. Respondent contends that Petitioner's argument was considered and rejected at the time of his direct appeal.

In Petitioner's direct appeal, he raised the issue of prosecutorial misconduct with respect to statements made in the prosecutor's closing statement concerning witnesses McManus, Stites and Griffin.  (Appellant's Direct Appeal Brief, No. A05-15, 2005 WL 4120317, at *46 (June 30, 2005).   The Minnesota Supreme Court held that Petitioner did not object to the statements during closing argument, and on review for plain error, the prosecutor's references did not affect Petitioner's substantial rights.  Vance, 714 N.W.2d at 442.    In his pro se appeal for post-conviction relief, Petitioner again asserted these claims, see Appellant's Mem. in Supp. Pet. for

Post-Conviction Relief, Dakota County Case # 02018427 at 10-12), and the Minnesota Supreme Court held that to the extent that this ground of relief was known to Petitioner at the time of his direct appeal, it was not raised successfully (as to comments made by the prosecutor regarding witness McManus) or apparently not raised (with respect to comments made by the prosecutor regarding other state witnesses).

Petitioner's claims for relief related to prosecutorial misconduct were considered by the state courts.  See Vance, 714 N.W.2d at 442; Vance, 752 N.W.2d at 517.  Reviewing the decisions in the context of 28 U.S.C. § 2254, Petitioner has not shown that they were contrary to or an unreasonable application of established Supreme Court precedent, nor were the decisions based on an unreasonable determination of the facts. Accordingly, the Court recommends the denial of Petitioner's petition on these grounds.

### 5.      Prejudicial Error of Prosecutor

In his fifth ground for relief, Petitioner claims a violation of his 5th and 6th Amendment rights due to the admission into evidence of a letter written by Petitioner to his co-defendant. Petitioner specifically claims that it was prejudicial error for the prosecution to admit only a redacted portion of the letter.  Respondent argues that the letter was introduced at trial as a redacted document, with no objection by Petitioner.

Petitioner also argues a violation of his right to a fair trial by admitting into evidence the testimony of several police officers regarding the undercover bar conversation recorded between Petitioner and witness Stites, who was wearing a body wire.  Petitioner argues that one of the officers admitted to being unable to hear the conversation due to noise levels in the bar and another officer admitted to hearing loss in one ear.

As to the admissibility of the redacted letter, Petitioner did not raise this issue on direct

appeal.  See Appellant's Direct Appeal Brief, Minnesota v. Vance, No. A05-15, 2005 WL

4120317 (June 30, 2005).  The letter is mentioned as a factual matter in passing in the Minnesota

Supreme Court's opinion on direct appeal, Vance, 714 N.W.2d at 441, but is not otherwise

addressed by the court.  In response to Petitioner's claim for post-conviction relief that the

admission of the redacted letter constituted prejudicial error, the state argued that the letter was

introduced at trial with no objection by Petitioner.  Respondent's Direct Appeal Brief, Minnesota

v. Vance, No. A07-1552, 2008 WL 2873517, at *9-10 (Feb. 8, 2008).

Not only did Petitioner fail to object at trial to the admissibility of the letter, he failed to

raise the issue on direct appeal.  Under Knaffla, he is therefore barred from raising it here and

neither exception to Knaffla applies.  Furthermore, under Minnesota law, failure to object to the

admission of evidence at trial constitutes waiver of the right to appeal on that basis, unless there

is evidence of plain error affecting the defendant's substantial rights.  Minnesota v. Vick, 632

N.W.2d 676, 684-85 (Minn. 2001).   In that instance, a defendant bears a "heavy burden" of

persuasion to show that "the error was prejudicial and affected the outcome of the case." Id.

(citation omitted).  Petitioner made no such showing to the state court.

As to Petitioner's claim regarding the police officers' testimony and hearing abilities, this

claim was not raised on direct appeal.  See Appellant's Direct Appeal Brief, Minnesota v. Vance,

A05-15, 2005 WL 4120317 (June 30, 2005).   Because Petitioner did not raise it below, he failed

to fairly present the claim to the state court and has no right under state law to raise the claim

now.  Indeed, the Knaffla rule bars Petitioner from raising the issue, and neither of the Knaffla

exceptions applies.  Petitioner has shown neither cause and prejudice for the default nor that a

fundamental miscarriage of justice would result if the Court does not consider the claim.  Habeas

relief is therefore unavailable.

### 6.     Denial of Right of Appeal

In his sixth ground for relief, Petitioner claims a denial of the right of appeal. Specifically, he alleges a violation of his due process rights, arguing that the trial court failed to disclose exculpatory evidence in the form of a surveillance tape.  He also argues that the trial court apparently erred by refusing to admit "(6) affidavits of perjured testimony and unheard significant testimony in the form of newly discovered evidence, ineffective assistance of counsel proof and numerous grounds "requiring an evidentiary hearing.  (Petition at 6.)  The Court construes Petitioner's rather tenuous argument to be that because such evidence was not admitted at the outset, Petitioner was denied a right of appeal.

Respondent contends that Petitioner was clearly not denied a right of appeal, as he filed a direct appeal and a petition for post-conviction relief, all with the assistance of counsel. Petitioner also filed supplemental pleadings on his own behalf.

The Court concludes that Petitioner's right of appeal was not abridged in any way, nor is an evidentiary hearing required.  As Respondent notes, Petitioner filed appeals with the Minnesota state court, with the assistance of counsel, and in some instances, he submitted pro se pleadings.  As to the particular claims supporting this ground of relief – i.e., the alleged failure to disclose exculpatory evidence, the six affidavits regarding allegedly perjured testimony and the claim of ineffective assistance of counsel – these issues are raised elsewhere in Petitioner's habeas petition and addressed by the Court.  The Court therefore recommends that with respect to the denial of right to appeal, this ground of relief should be denied.

### 7.     Denial of Effective Assistance of Counsel

Petitioner's seventh and final ground of relief is a claim of ineffective assistance of counsel.  Petitioner alleges a violation of his due process rights.  Petitioner alleges the following

instances of ineffective assistance of trial counsel: (1) the failure to appeal "the decisions and errors" of the district court judge; (2) permitting, without objection, "unsupported police testimony" via the testimony of witness Melissa Stites; (3) failing "numerous times to object to plain error, misconduct, and prejudicial error which later were deemed as waived errors on appeal;" (4) failing to hold the prosecution to its burden of proof beyond a reasonable doubt; (5) failing in conducting its initial investigation and preparing Petitioner's defense; and (6) advising Petitioner not to testify and choosing not to call any witnesses in the defense's case.  (Petition at 6.)  As to appellate counsel, Petitioner claims ineffective assistance for failing to raise the grounds of appeal requested by Petitioner – grounds later considered procedurally barred because they were unsuccessfully raised.  (Id.)  Respondent contends that Petitioner has failed to meet the substantial burden of establishing ineffective assistance of counsel.

As to Petitioner's arguments, he knew of his claim of ineffective assistance at the time of his direct appeal and he did not raise it.  See Appellant's Direct Appeal Brief, Minnesota v. Vance, No. A05-15, 2005 WL 4120317 (June 30, 2005)  In Minnesota v. Doppler, 660 N.W.2d 797, 801-02, the Minnesota Supreme Court held that the Knaffla rule applied to the appellant's claim of ineffective assistance of counsel because the appellant knew of the claim at the time of his direct appeal, and neither Knaffla exception applied.

In his post-conviction appeal, however, Petitioner raised claims of ineffective assistance of trial and appellate counsel.  Vance, 752 N.W.2d at 513-14.  Specifically, Petitioner argued that he did not receive a fair trial based on his trial counsel's failure to conduct an investigation, talk to any witnesses and call any witnesses to testify on his behalf.  Id. at 513.  As to his appellate counsel, he argued ineffective assistance for failure to raise on direct appeal his trial counsel's ineffective assistance.  Id. at 514.

### a.     Ineffective Assistance of Trial Counsel

Petitioner's post-conviction claims regarding trial counsel mirror several of the habeas grounds in the instant petition wherein Petitioner asserts that his trial counsel failed to conduct its initial investigation, prepare his defense and failed to call any witnesses to testify in his behalf. (Petition at 6.)   The Minnesota Supreme Court held that Petitioner failed to allege facts affirmatively showing that his trial counsel's representation fell below an objective standard of reasonableness, and that but for the errors, the result would have been different. Vance, 752 N.W.2d at 513, citing Wilson v. Minnesota, 582 N.W.2d 882, 885 (Minn. 1998).  In addition, the Minnesota Supreme Court held that Petitioner's allegations that trial counsel failed to conduct an investigation, talk to any witnesses and call any witnesses to testify were all facts known to Petitioner at the time of his direct appeal and therefore were barred under the rule set out in Knaffla.  Vance, 752 N.W.2d at 514.   Because Petitioner failed to raise these grounds, his claims were procedurally barred. Id.

Regarding the ineffective assistance claims that trial counsel did not interview or talk to witnesses, Petitioner has not shown that the state court's decision was contrary to or an unreasonable application of established Supreme Court precedent, nor was it based on an unreasonable determination of the facts.  Furthermore, Petitioner has not shown a reasonable probability that but for trial counsel's failure to conduct an investigation/prepare a defense in the manner desired by Petitioner and failure to call any witnesses, the outcome of Petitioner's case would have been different.

In his habeas petition, Petitioner also alleges ineffective assistance of counsel for trial counsel's failure to appeal "the decisions and errors" of the district court judge; permitting, without objection, "unsupported police testimony" via the testimony of witness Melissa Stites;

failing "numerous times to object to plain error, misconduct, and prejudicial error which later were deemed as waived errors on appeal;" failing to hold the prosecution to its burden of proof beyond a reasonable doubt and advising Petitioner not to testify. These claims are procedurally defaulted because Petitioner knew of the underlying facts at the time he directly appealed but failed to raise these claims in prior proceedings. In addition, these claims are now barred under Knaffla, and neither exception applies. Habeas relief is foreclosed because Petitioner has shown neither cause and prejudice for the default nor that a fundamental miscarriage of justice would result from procedurally dispensing with the claims.

Even if Petitioner's claims were not procedurally defaulted, they would fail on the merits because Petitioner has not shown that trial counsel's representation was deficient or that he was prejudiced by the representation. Even assuming that counsel committed the errors which Petitioner alleges, Petitioner has not shown that the outcome of his trial would have been different. Moreover, despite the rather vague nature of Petitioner's ineffective assistance of counsel claims, the Court cannot conclude that trial counsel acted unreasonably. Certainly with respect to trial counsel's advice against Petitioner testifying in his own defense, the Court concludes that trial counsel did not act unreasonably in offering such advice.

### b.       Ineffective Assistance of Appellate Counsel

As to Petitioner's claim of ineffective assistance of appellate counsel, he argues, "Defendant's appellate counsel failed to raise the grounds defendant requested, which were later considered 'procedurally barred' because they were unsuccessfully raised." (Petition at 6.) Petitioner fails to identify the procedurally barred claims to which he refers, however. In its ruling on Petitioner's post-conviction appeal, the Minnesota Supreme Court stated that when a petitioner bases his ineffective assistance of appellate counsel claim on that counsel's failure to

raise an ineffective assistance of trial counsel claim, the petitioner must first show that trial counsel was ineffective.  Vance, 752 N.W.2d at 514, citing Zenanko v. Minnesota, 688 N.W.2d 861, 865 (Minn. 2004).  Because the Minnesota Supreme Court found that Petitioner had failed to make such a showing, his ineffective assistance of appellate counsel claim failed.  Id. at 514. Petitioner has not shown that the state court's decision was contrary to or an unreasonable application of established Supreme Court precedent, nor was it based on an unreasonable determination of the facts, nor has Petitioner shown that but for appellate counsel's failure to challenge trial counsel's effectiveness, the outcome of his appeal would have been any different. The Court recommends that this ground of habeas relief be denied.

 If Petitioner's claim as to the ineffective assistance of appellate counsel refers to actions other than those raised in his post-conviction appeal (i.e., that appellate counsel was ineffective for failing to raise on direct appeal a claim of ineffective assistance of trial counsel), then the claim is procedurally defaulted because it was not raised at the state court level.  The claim would now be barred under Knaffla, and neither exception applies.  Petitioner has shown neither cause and prejudice for the default, nor that a fundamental miscarriage of justice would result from procedurally dispensing with the claim.  Furthermore, even on the merits, Petitioner has failed to show that his appellate counsel was deficient, or that he was prejudiced by the representation.   The Court recommends the denial of this ground of relief.

## C.    Appointment of Counsel

Plaintiff has filed a motion asking the Court to appoint counsel to represent him in this matter.  Pro se litigants do not have a constitutional or statutory right to counsel in civil cases. Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998).  Rather, the appointment of counsel in cases such as this one is a matter committed to the discretion of the trial court.  McCall v.

Benson, 114 F.3d 754, 756 (8th Cir. 1997); Mosby v. Mabry, 697 F.2d 213, 214 (8th Cir. 1982). Among the factors the court should consider in determining whether to appoint counsel are the factual complexity of the case, the ability of the litigant to present his claims, the complexity of the legal issues and whether both the litigant and the court would benefit from having the litigant represented by counsel. McCall, 114 F.3d at 756; Johnson v. Williams, 788 F.2d 1319, 1322-23 (8th Cir. 1986).

The Court finds that neither the facts nor the legal issues involved in this case are so complex as to warrant appointment of counsel. It appears to the Court that Plaintiff has the threshold ability to articulate his claims and to argue his positions, and that he will be able to communicate effectively with the Court. Moreover, the Court is presently satisfied that appointment of counsel would not substantially benefit the Court or Plaintiff. Therefore, Plaintiff's request for counsel should be denied.

**III.     RECOMMENDATION**

Based on the foregoing, and all the files, records and proceedings herein, IT IS

HEREBY RECOMMENDED that:

1.     Petitioner's Petition for a Writ of Habeas Corpus (Doc. No. 1) be DENIED; and

2.     This action be DISMISSED WITH PREJUDICE; and

3.     Petitioner's  Motion for Evidentiary Hearing and Relief (Doc. No. 9) be

DENIED; and

4.     Petitioner's Application for Appointment of Counsel (Doc. No. 12) be DENIED.

Dated: December 16, 2008

s/Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing
with the Clerk of Court and serving all parties by **December 31, 2008**, a writing which
specifically identifies those portions of this Report to which objections are made and the basis of
those objections.  Failure to comply with this procedure may operate as a forfeiture of the
objecting party's right to seek review in the Court of Appeals.  This Report and
Recommendation does not constitute an order or judgment of the District Court, and it is
therefore not appealable to the Court of Appeals.